## No. 26467

**Birdie Cobb Patterson a/k/a Sandra C. Patterson v. F. J. Serafini, individually and in his capacity as Public Trustee for the City and County of Denver, Key Realty Company, a Colorado corporation, Advance Mortgage Corporation, a Colorado corporation, and Russell D. Berget and Sharon K. Berget**

(532 P.2d 965)

Decided December 23, 1974. Opinion modified and as modified rehearing denied March 10, 1975.

210

Marshall A. Snider, Tucker K. Trautman, Legal Aid Society of Metropolitan Denver, Howard I. Rosenberg, for plaintiff-appellant.

Max P. Zall, City Attorney, Herman Atencio, Assistant, for defendant-appellee F. J. Serafini.

Barnes & Jensen, Gerald L. Jensen, for defendant-appellee Key Realty Company.

Grant, Shafroth, Toll and McHendrie, Charles H. Haines, Jr., Ronald C. Butz, for defendants-appellees Advance Mortgage Corporation and Russell D. Berget and Sharon K. Berget.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The Boston Federal Savings & Loan Association (Boston Federal) held a deed of trust embracing a residence, which had been executed to the public trustee as security for a loan. The plaintiff purchased the property, agreeing to pay the deed of trust. Later the Boston Federal declared the note, with an unpaid balance of $11,675.86, to be in default and filed written demand for sale with the public trustee. In the meantime the defendant Key Realty Company (Key Realty) had become an assignee of a judgment against the plaintiff in an amount in excess of $10,000. Transcript of this judgment was placed of record, but there has not been a levy thereunder. Following the recording of the transcript of judgment, the plaintiff caused a homestead exemption to be entered of record with respect to the residence.

The public trustee advertised the property for sale under provision of the deed of trust and as provided by statute. At the sale the property was sold for $15,050, being an excess of $3,374.14 above the trust deed indebtedness. The plaintiff then brought this action, asking that the sale be declared void and that the public trustee be temporarily enjoined from issuing a deed. She also requested that the excess of $3,374.14 be paid to her. The court denied the temporary injunction. The plaintiff has not filed a notice of *lis pendens*.

The plaintiff did not redeem within the statutory six-month redemption period and, immediately after expiration of that period, Key Realty, as assignee of the judgment, redeemed the property for $15,601.50. The public trustee then issued a deed to Key Realty.

Under stipulation the court ordered the plaintiff to vacate the premises, and for moving and relocation expenses ordered $1000 of the $3,374.14 to be paid to plaintiff. The remaining $2,374.14 is hereinafter referred to as excess. After the district court's judgment, the excess was paid to Key Realty.

Key Realty sold the property to the appellees Berget for $24,000 and the appellee Advance Mortgage Corporation made a loan to the Bergets secured by a deed of trust on the property. The Bergets and Advance Mortgage Corporation were not parties in the trial court and, after the case was here on appeal and on their motion, we ordered that they be made appellees.

The plaintiff's appeal was to the Court of Appeals, from which we accepted jurisdiction because of the constitutional questions raised.

The plaintiff contends that the public trustee's sale was void because:

1. The statutory process of foreclosure violates due process as it does not provide the land owner with any notice or opportunity to be heard as to the propriety of the foreclosure or the foreclosure procedure;

2. The notice of foreclosure sale as provided in C.R.S. 1963, 118-3-13 does not comply with due process as it does not inform the land owner of the right to a hearing to contest the foreclosure;

3. The opportunity of a land owner whose property is being foreclosed by the public trustee to file an independent suit to enjoin the sale does not constitute a constitutionally valid "opportunity for a hearing."

The trial court ruled against the plaintiff as to the constitutional questions. It further ordered that, under C.R.S. 1963, 118-3-13 and 118-9-3 as amended in 1973 (Colo. Sess. Laws 1973, ch. 336 at 1153), the excess should be paid by the public trustee to the lienor last redeeming, Key Realty. We decline to pass upon the constitutional questions and reverse as to the payment of the excess.

I.

Our homestead statute reads:

"Every householder in the state of Colorado, being the head of a family, shall be entitled to a homestead not exceeding in value the

sum of five thousand dollars, exempt from execution and attachment, arising from any debt, contract or civil obligation, entered into or incurred after the effective date of this section." C.R.S. 1963, 77-3-1.

Except as to the amount of dollars, this statute has remained unchanged since it was approved on January 10, 1868. R.S. p. 385, § 57. C.R.S. 1963, 77-3-2 provides for the manner in which a homestead may be created in the office of the county clerk and recorder.

The amendments of 118-3-13 and 118-9-3 in 1973, mentioned above, added the following language to those sections:

"(6) If, at a foreclosure sale by a public trustee, the property is struck and sold for an amount in excess of the expenses of sale and moneys due the beneficiary or legal holder of the indebtedness, the excess moneys shall be paid into the hands of the county treasurer to be held in escrow by him until the end of all redemption periods as provided in sections 118-9-2 and 118-9-3.

"(7) Upon the expiration of all redemption periods as provided in sections 118-9-2 and 118-9-3, if notice of intent to redeem has been duly filed, and if no redemption is made as provided in said sections, the excess moneys shall be paid to the junior lienors in the order of their priority and then to the owner of record as of the day of the foreclosure sale. The public trustee may request proof in the form of an affidavit establishing the amount due on any junior lienor.

\* \* \* \*

"(4) When a lienor redeems property from a foreclosure sale, escrow funds, not to exceed the amount due on such lien, shall be paid to the last person or institution redeeming said property. Moneys in excess of such lien shall be paid to the owner of record as of the day of the foreclosure sale."

In 1894 this Court held, in *Weare v. Johnson,* 20 Colo. 363, 38 P. 374, that real estate, which had not been subjected specifically to a judgment lien by levy before a homestead was placed thereon, was exempt from execution. To the same effect is the leading case in this jurisdiction on this subject. *Sterling National Bank v. Francis,* 78 Colo. 204, 240 P. 945 (1925). Other Colorado authorities are cited in the latter opinion.

The right of homestead is so precious that, if the General Assembly had intended to overrule *Sterling National Bank v. Francis, supra,* it would have expressed the new rule in specific language. We hold that the 1973 amendment did not change the rule of *Sterling National Bank.* By virtue of the homestead, the plaintiff is entitled to the excess. Her homestead rights are superior to the judgment lien.

II.

 In addition to the prayer for payment of the excess, the only relief requested by the plaintiff in her complaint was to have the public trustee's sale declared void because of unconstitutional reasons and to temporarily and preliminarily enjoin the public trustee from issuing a deed. Absent a filing of notice of *lis pendens* of this action prior to the issuance of the deed, the issues relating to the validity of the trustee's sale became moot after the court denied the temporary injunction. We, therefore, decline to rule upon the constitutional questions.

There are two further reasons for our failure to approach these questions. First, the plaintiff has asked us to rule that she is entitled to the excess money, and we have so ruled. It is inconsistent for her to claim that the sale was void, since her right to the excess is predicated upon a valid sale. Second, we should not be considering the constitutional questions with Boston Federal not before us as a party. It is an indispensable party in any proceedings to declare the sale under its foreclosure to be void.

The judgment is reversed and the cause remanded to the district court with directions to enter judgment in favor of the plaintiff and against Key Realty for $2,374.14, plus interest and costs as may be proper, and to dismiss the complaint insofar as it relates to the constitutional questions.

MR. JUSTICE LEE and MR. JUSTICE HODGES dissent.

MR. JUSTICE ERICKSON does not participate.

MR. JUSTICE LEE dissenting:

On petition for rehearing, I respectfully dissent to that portion of the majority opinion which awards the excess escrow funds to the plaintiff.

In my view, the plaintiff in failing to redeem from the foreclo-

sure sale lost the benefits of her homestead rights. In order to maintain the homestead priority over the judgment lien of Key Realty, it was necessary that she exercise her right of redemption. Had she done so, the effect of the foreclosure sale would have been annulled under the provisions of C.R.S. 1963, 118-9-5,[1] which provides:

*"Redemption annuls sale, when — recording of certificate.* — If redemption be made by the owner of the premises, it shall annul the sale and leave the premises subject to all liens, which would have existed if no sale had been made, except the lien of the foreclosed mortgage, which shall be discharged by the sale. * * * If redemption be made by a lienor, his certificate of redemption, duly recorded, operates as an assignment to him of the estate and interest acquired by the purchaser at the sale, subject, however, to the rights of persons who may be entitled subsequently to redeem.''

Plaintiff's title to the premises would then have been free of the lien of the foreclosed deed of trust, but subject to the other liens which would have existed if no foreclosure sale had been made, *i.e.,* the lien of Key Realty. Of course, in this circumstance, had she redeemed, her homestead interest would have priority over the lien of Key Realty under the ruling in *Sterling Bank v. Francis,* 78 Colo. 204, 240 P. 945.

Not having chosen to redeem, plaintiff's title and homestead interest, which was inferior to the lien of the Boston Federal deed of trust, was foreclosed by the sale. When Key Realty, admittedly a lienor junior to the plaintiff's homestead interest, redeemed from the sale, by virtue of the provisions of section 118-9-5, Key Realty succeeded by operation of the statute to the interest of the purchaser of the certificate of sale, which was predicated on the Boston Federal deed of trust and admittedly was superior to plaintiff's homestead interest.

In my view, *Sterling Bank v. Francis, supra,* is inapposite under the circumstances of this case. While it was initially true under *Sterling Bank v. Francis, supra,* that plaintiff's homestead rights were superior to Key Realty's judgment lien before fore-

---

[1]Now section 38-39-105, C.R.S. 1973.

closure and redemption, this priority became immaterial when redemption was waived by plaintiff. Plaintiff's entitlement, if any, to the excess proceeds must be predicated on the statute directing their disposition. Section 38-39-103(4), C.R.S. 1973, provides:

"When a lienor redeems property from a foreclosure sale, escrow funds, not to exceed the amount due on such lien, shall be paid to the last person or institution redeeming said property. *Moneys in excess of such lien* shall be paid to the owner of record as of the day of the foreclosure sale." (Emphasis added.)

This section is pertinent to the disposition of the excess under the present facts. It requires that the excess funds in the hands of the county treasurer be paid to Key Realty, the last person or institution redeeming, but not to exceed the amount due on the lien of Key Realty, which was in excess of ten thousand dollars. The excess in the hands of the treasurer amounted to only $2,374.14, after the payment of $1,000 to plaintiff upon her vacating the premises. By this statute, the excess should have been paid to Key Realty inasmuch as it was less than the amount owing Key Realty on its lien.

I would therefore affirm the trial court's judgment in awarding the excess funds to Key Realty.

I am authorized to say that MR. JUSTICE HODGES joins in this dissent.